IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ERNEST ROBERTS, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) Case No. 4:19-CV-00841-SRB |
| v. | ) ) ) |
| HARLEY DAVIDSON FINANCIAL SERVICES, INC. d/b/a HARLEY DAVIDSON CREDIT CORP., d/b/a EAGLEMARK SAVINGS BANK, | ) ) ) ) ) |
| Defendant. | ) ) |

**ORDER**

Before the Court is Defendant's Motion to Compel Arbitration, or in the Alternative, to Dismiss Second Amended Class Complaint. (Doc. #5). For the reasons stated below, the motion is DENIED.[1]

**I. BACKGROUND**

On or around March 19, 2016, Plaintiff Ernest Roberts ("Roberts") purchased a 2016 Harley-Davidson FLSS Softail Slim motorcycle from a Harley-Davidson dealership located in Grandview, Missouri. To finance that purchase, Roberts applied for a loan from Eaglemark Savings Bank ("ESB"), a subsidiary of Defendant Harley-Davidson Financial Services, Inc. ("HDFS"). This dispute arises from a Promissory Note and Security Agreement ("PNSA") Roberts allegedly executed when he bought his Softail Slim motorcycle, though the question of whether Roberts signed that PNSA and agreed to its terms is contested.

---

[1] As a preliminary matter, the Court notes Plaintiff's Suggestions in Opposition to Defendant's motion to dismiss exceeds the 15-page limit set forth in Local Rule 7.0(d)(1). The Court reminds Plaintiff that a party must request the leave of Court before filing submissions that exceed page limits.

Roberts alleges that when he agreed to purchase the motorcycle, his monthly installment payments were not supposed to exceed $330. Roberts states that he manually signed all of the required purchase paperwork at the dealership and did not receive any copies of those signed documents. When Roberts later received his first monthly statement from HDFS, it stated that he owed $521 per month. Roberts returned to the dealership where he purchased the motorcycle to inquire about the increased monthly payment rate. There, the Harley-Davidson salespeople produced a PNSA stating Roberts owed monthly installment payments of $521 with Roberts' computer-generated digital signature and initials appearing at the bottom of the form. Roberts insists he never digitally signed the PNSA, contends the PNSA was not provided to him at the time of sale, and alleges that additional terms were inserted into the PNSA by the seller to inflate the total monthly payment rate.

On March 19, 2019, Roberts filed a petition for damages against HDFS in the Circuit Court of Jackson County, Missouri. (Doc. #1-4, pp. 1–8). Roberts asserted claims for alleged violations of the Missouri Motor Vehicle Time Sales Act ("MVTSA") as well as the Missouri Merchandising Practices Act ("MMPA"), and sought actual, statutory, and punitive damages. On June 28, 2019, HDFS filed a motion to compel arbitration (Doc. #1-4, pp. 21–31). On August 26, 2019, the state court denied HDFS's motion to compel arbitration. (Doc. #1-4, p. 93). HDFS did not appeal that denial. On September 12, 2019, Roberts filed an amended class action petition for damages (Doc. #1-4, pp. 99–108), and on September 20, 2019, he filed a second amended class action petition. (Doc. #1-4, pp. 113–126). In his second amended class action petition,[2] Roberts added a claim for injunctive relief (Count III) and sought recovery on behalf of "all persons residing in Missouri who purchased, or attempted to purchase, a motor

---

[2] The Court will hereinafter refer to this pleading as "complaint" in order to correspond with the terminology used in the Federal Rules of Civil Procedure.

vehicle from Defendant an [sic] installment contract or similar financing instrument . . . from March 19, 2014 to the present." (Doc. #1-4, p. 117). On October 18, 2019, HDFS removed the case to federal court pursuant to diversity jurisdiction under the Class Action Fairness Act ("CAFA"), and subsequently filed the instant motion to compel arbitration or, in the alternative, dismiss. Briefing on the instant motion was stayed pending the outcome of Roberts' motion to remand (Doc. #13), which this Court denied on January 2, 2020. (Doc. #18).

HDFS argues Roberts is subject to an arbitration agreement included in the PNSA or, in the alternative, that Roberts' second amended complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). Roberts opposes the motion, arguing the Court should not consider the motion to compel arbitration because the issue was decided in state court prior to removal. For the reasons discussed below, this Court declines to disturb the state court's prior order denying HDFS's motion to compel arbitration and will only consider HDFS's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6).

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [party] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (internal citation and quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678). The Court must accept all facts

alleged in the complaint as true when deciding a motion to dismiss. *See Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir. 2009) (noting "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable").

**III. DISCUSSION**

A threshold issue presented by the parties is whether this Court should even consider HDFS's motion to compel arbitration. Roberts argues this Court, pursuant to the law-of-the-case doctrine, should decline to disturb the state court's order denying HDFS's motion to compel arbitration issued prior to removal. HDFS contends the law-of-the-case doctrine does not apply[3] and urges this Court to consider the issue anew in light of the procedural posture of the case. For the reasons discussed below, this Court declines to disturb the state court's denial of HDFS's motion to compel arbitration and elects not to exercise its discretion in this case.

**A. Application of Law-of-the-Case Doctrine to HDFS Motion to Compel Arbitration**

The law-of-the-case doctrine "requires courts to adhere to decisions made in earlier proceedings in order to ensure uniformity of decisions, protect the expectations of the parties, and promote judicial economy." *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 830 (8th Cir. 2008); *see also Alexander v. Jensen-Carter*, 711 F.3d 905, 909 (8th Cir. 2013) (citing *Arizona v. California*, 460 U.S. 605, 618 (1983)) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

---

[3] HDFS argues that Eighth Circuit precedent holds that the law-of-the-case doctrine does not run from state to federal jurisdiction, citing for support *Harrison v. Foley*, 206 F.57, 59–60 (8th Cir. 1913), and *Rogers v. Chicago R.I. & P. Ry. Co.*, 39 F.2d 601, 604 (8th Cir. 1930). Neither *Harrison* nor *Rogers* address the effect of a state court order in a removal context, and the Court finds the posture of this case is readily distinguishable.

4

"Law of the case is a doctrine of discretion, not a command to the courts." *Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 807 F.2d 1433, 1440 (8th Cir. 1986). The doctrine "promotes the finality and efficiency of the judicial process by protecting against the agitation of settled disputes." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988). Generally, a court will not reconsider an issue that has already been decided in a case unless substantially new evidence is introduced, an intervening change of law occurs, or the decision is "clearly erroneous and works a manifest injustice." *Bethea v. Levi Strauss & Co.*, 916 F.2d 453, 457 (8th Cir. 1990); *see also Little Earth*, 807 F.2d at 1441.

The law-of-the-case doctrine is particularly relevant where, as here, the case is removed from state to federal court. "After removal, the federal court takes up the case where the State Court left it off." *Granny Goose Foods, Inc. v. Bd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 436 (1974) (internal quotation marks and citations omitted). "All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effective until dissolved or modified by the district court." 28 U.S.C. § 1450. In turn, a state court order issued prior to removal "is the law of the case until modified." *Groh v. JPMorgan Chase Bank, N.A.*, No. 14-CV-40-W-DGK, 2014 WL 1687696, at *2 (W.D. Mo. Apr. 29, 2014) (citing *Duncan v. Gegan,* 101 U.S. 810, 812 (1879)); *see also* 18 MOORE'S FEDERAL PRACTICE–Civil § 134.22 (Matthew Bender 3d. Ed.) ("When an action is removed from a state court to a federal court, the law of the case doctrine applies to the decisions entered by the state court prior to removal.").

After considering the parties' arguments and thoroughly reviewing the circumstances of this case, the Court declines to exercise its discretion to reopen the state court's previous denial of HDFS's motion to compel arbitration. In the state court proceeding prior to removal, HDFS

5

filed a motion to compel arbitration and argued that Roberts was subject to the arbitration clause contained within the PNSA. The arbitration clause in the PNSA itself expressly states:

> This arbitration provision relates to a transaction (or transactions) involving interstate commerce. The parties acknowledge and agree that this clause and the Federal Arbitration Act (9 U.S.C. § 1 et seq) shall govern any and all claims between [Roberts] and [HDFS][.]

(Doc. #1-2, p. 21). A state court reviewing a motion to compel arbitration governed by the Federal Arbitration Act ("FAA") applies the same body of law and precedent that a federal court would when evaluating the validity and enforceability of an arbitration provision. *See, e.g.*, *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 805 (Mo. banc 2015) (applying federal law in evaluating the validity and enforceability of an arbitration clause governed by the FAA). HDFS's motion was fully briefed by the parties, who each made the same arguments for or against arbitration as they do here. The state court denied HDFS's motion to compel arbitration and HDFS never appealed that denial.[4] In turn, the state court's denial of HDFS's motion to compel arbitration was the law of this case at the time of removal, and that order remains in "full force" unless modified by this Court. *See* 28 U.S.C. § 1450.

As the law of this case, the state court's denial of HDFS's motion to compel arbitration should stand absent "extraordinary circumstances" that warrant relitigating the issue. *Bethea*, 916 F.2d at 457. A court cannot exercise its discretion to reopen a settled issue in a case without proper justification for doing so. *See Little Earth*, 807 F.2d at 1441 (a court "will reconsider a previously decided issue only if substantially different evidence is subsequently introduced or the decision is clearly erroneous and works manifest injustice"). HDFS does not argue there has

---

[4] Under Missouri state law, an appeal of the denial of a motion to compel arbitration must be filed within ten days of the order denying the motion. *See* Mo. Supreme Court Rule 81.04(a). Failure to timely file an appeal during that ten-day window renders the order denying the motion to compel arbitration final. *Sanford v. CenturyTel of Mo., LLC*, 490 S.W.3d 717, 719–20 (Mo. banc 2016).

been an intervening change of law or that the state court's decision was clearly erroneous and produced a manifestly unjust result.

HDFS instead argues this Court must consider the pending motion to compel arbitration because Roberts amended his complaint after the state court denied HDFS's original motion to compel arbitration. HDFS contends the class action allegations added to Roberts' second amended complaint were not before the state court when it declined to compel arbitration, suggesting the outcome would have been different due to the class-action waiver contained in the PNSA's arbitration clause. To the extent HDFS argues the class action allegations contained in the second amended complaint are "substantially different" evidence meriting reconsideration of the state court's order denying arbitration, the Court disagrees. *See Little Earth*, 807 F.2d at 1441; *Maxfield v. Cintas Corp., No. 2*, 487 F.3d 1132, 1137 (8th Cir. 2007). Here, the class action allegations simply contend that other Missouri residents who also purchased (or attempted to purchase) a motorcycle from Harley-Davidson and were provided a copy of the PNSA were harmed because the PNSA contains statements and omissions that violate Missouri law. Such allegations do not relate to whether Roberts signed the PNSA, accepted the PNSA and its terms, or whether he is subject to the arbitration clause in the PNSA. Those formation questions, and the relevant facts relating to those questions, were properly before the state court when it considered HDFS's motion to compel arbitration, and the state court issued its ruling after the motion was fully and thoroughly briefed by the parties. In short, the class action allegations are simply not the type of substantially different evidence that warrants relitigating the issue of whether Roberts must arbitrate his suit.

To the extent HDFS argues that Roberts' amendment of his complaint is a changed circumstance warranting deviation from the law of the case, the Court also finds that argument

unpersuasive.  While "changed circumstances" can "provide a basis for departing from the law of the case," there is no indication the class action allegations added to the amended complaint create a situation "so extraordinary" that HDFS should be given a second bite at the arbitration apple.  *Little Earth*, 807 F.2d at 1141.  When the state court in this case denied HDFS's motion to compel arbitration, "the legal meaning of [that] order and its ramifications were evident the day the order was issued."  *Id.*  Nevertheless, HDFS did not appeal that ruling, rendering it final.  The class allegations added to the second amended complaint have no effect on the facts, law, or arguments relating to the question of whether Roberts was subject to the arbitration agreement in the PNSA, and thus their addition is not a changed circumstance that justifies disturbing the state court's prior decision.

In sum, this Court elects to respect the law of this case and, in choosing to not exercise its discretion to reopen the state court's prior order, leaves intact the state court's denial of HDFS's motion to compel arbitration.

### B.  12(b)(6): Motion to Dismiss for Failure to State Claim

Defendant HDFS seeks dismissal of all Counts raised by Roberts in his second amended complaint.  HDFS argues dismissal of Count I is warranted because: (1) HDFS is not a "seller" and therefore is not subject to liability under § 365.070, and (2) Roberts cannot recover for any alleged defects in a retail installment contract because he claims that he did not sign the PNSA.  HDFS additionally argues that because Roberts' MVTSA claims under Count I fail, his MMPA claim under Count II and his request for injunctive relief under Count III must also fail.  Roberts disagrees, arguing he has sufficiently pled violations of the MVTSA and MMPA and that he is not barred from relief simply because he claims that he did not sign the PNSA.

8

1. **Count I: Violations of the MVTSA**

The MVTSA regulates the sale of motor vehicles in the state of Missouri, including the installment financing of motor vehicles. *See generally* Mo. Rev. Stat. §§ 365.010–365.200. A vehicle purchased on an installment financing plan is called a "retail installment transaction," defined under the MVTSA as:

> A sale of a motor vehicle by a retail seller to a retail buyer on time under a retail installment contract for a time sale price payment in one or more deferred installments.

Mo. Rev. Stat. § 365.020.11. Such transactions are evidenced by a "retail installment contract," defined under the MVTSA as:

> [A]n agreement evidencing a retail installment transaction entered into in this state pursuant to which the title to or a lien upon the motor vehicle, which is the subject matter of the retail instrument transaction, is retained or taken by the seller from the buyer as security for the buyer's obligation. The term includes a chattel mortgage or a conditional sales contract.

Mo. Rev. Stat. § 365.020.10. Retail installment contracts must comply with the requirements of § 365.070, which mandates each contract be in writing, signed by both the buyer and the seller, and contain certain informational disclosures (e.g. cash sale price, the amount of any down payment paid, the amount of each installment payment, etc.). The MVTSA bars "any person" who knowingly violates a provision of § 365.070 "from recovery of any time price differential, delinquency or collection charge on the contract." Mo. Rev. Stat. § 365.150.2.

   a. *HDFS Status as "Sales Finance Company" Under the MVTSA*

Roberts alleges that HDFS violated the MVTSA because the PNSA, a retail installment contract within the meaning of the MVTSA, misrepresents and/or omits key language, pricing information, and disclosures required under § 365.070. HDFS argues § 365.070 only imposes a legal duty on a "seller" and that, because HDFS is a "sales finance company" and not a "seller"

as defined under the MVTSA, Roberts' claim against HDFS must fail. Roberts argues the disclosures mandated under § 365.070 apply to the retail installment contract itself, regardless of whether HDFS is a "seller" or a "sales finance company" within the meaning of the MVTSA.

The Court finds that Roberts has sufficiently alleged facts plausibly showing HDFS could be subject to liability for the alleged deficiencies in the PNSA, and that his claims do not fail as a matter of law because HDFS is a "sales financing company." HDFS's argument that the plain language of § 365.070 imposes no legal duty on a sales financing company is contradicted by § 365.150.2, which imposes liability on "any person" who violates provisions of § 365.070. The MVTSA defines "person" as either "an individual, partnership, corporation, association, and any other group however organized." Mo. Rev. Stat. § 365.020.7. HDFS does not dispute that it is a corporation falling within the "any person" definition under § 365.020.7. HDFS also identifies no caselaw where a court determined a sales finance company cannot, as a matter of law, be subject to liability for alleged violations of § 365.070. *See, e.g.*, *Fielder v. Credit Acceptance Corp.*, 175 F.R.D. 313, 317 (W.D. Mo. 1997) (certifying a class action suit against a used-car dealer and a sales financing company for alleged violations of § 365.070 arising from retail installment contracts). In turn, Roberts' MVTSA claim does not necessarily fail because of HDFS's status as a "sales financing company" within the meaning of the MVTSA.

  b. ***Roberts' Ability to Recover for Retail Installment Contract Defects Under the MVTSA***

HDFS also argues dismissal of Count I is appropriate because the MVTSA "does not apply to claims by a 'buyer,' such as Plaintiff, where the buyer did not sign a retail installment contract." (Doc. #6, p. 13). Roberts disagrees, arguing he has standing to recover regardless of whether he, as a buyer, signed the PNSA. The parties do not dispute whether the PNSA is a

retail installment contract, but instead dispute whether Roberts can recover under the MVTSA for alleged defects in the PNSA if he allegedly never signed it.

Pursuant to the provisions of the MVTSA, a retail installment transaction is "a sale of a motor vehicle from a retail seller to a retail buyer pursuant to a retail installment contract." Mo. Rev. Stat. § 365.020.11. A "buyer" is "a person who buys a motor vehicle from retail seller in a retail installment transaction under a retail installment contract." Mo. Rev. Stat. § 365.020.9. A retail installment contract, in turn, simply memorializes a particular retail installment transaction. The parties do not dispute whether a retail installment transaction—the sale of a Softail Slim motorcycle—occurred. The issue raised by HDFS is whether a retail installment contract must be physically signed by the buyer for the buyer to be able to seek relief for its alleged defects under the MVTSA.

The Court finds Roberts is not barred from seeking relief for alleged violations of the MVTSA. In arguing Roberts must have signed the PNSA in order to seek relief under the MVTSA, HDFS relies on the Missouri Supreme Court's decision in *Ward v. West Cnty. Motor Co., Inc.*, 403 S.W.3d 82 (Mo. banc 2013). In *Ward*, the plaintiffs sued under the MMPA for alleged violations of the MVTSA after they paid security deposits to a car dealership that later refused to refund those deposits when the plaintiffs decided not to purchase their vehicles. *Id.* at 83. The Missouri Supreme Court upheld the dismissal of the plaintiffs' MVTSA claims, finding the plaintiffs were not buyers in a retail installment transaction because they never bought any vehicles. *Id.* at 85. Since the plaintiffs in *Ward* never actually completed any retail installment transactions, there were no retail installment contracts upon which they could seek relief, and the specific MVTSA provision underlying their claims only applied to situations where a retail installment transaction (and its accompanying retail installment contract) existed. *Id.*

Here, there is a retail installment transaction: the sale of the motorcycle. The PNSA is a written document evidencing that transaction, even though Robert disputes the accuracy of the PNSA and his assent to the specific terms included in the electronically-signed version. Taking Roberts' allegations as true as this Court must at this point in the proceeding, Roberts states that he purchased a motorcycle after agreeing to certain monthly repayment terms, manually signed documents memorializing that purchase, took possession of the motorcycle, and made payments on it. This case is therefore distinguishable from *Ward*, where there were no retail installment transactions to begin with. *Ward* does not, as a matter of law, bar Roberts from seeking relief under the MVTSA, and HDFS cites no cases holding the buyer in a retail installment transaction must physically sign a retail installment contract in order to benefit from the protections afforded under § 365.070, much less the subsections of § 365.070 underlying Roberts' claims. At this stage, Roberts has met his burden and plausibly alleges facts enabling his MVTSA claim to proceed. The Court denies HDFS's motion to dismiss Count I for failure to state a claim.

2. **Count II: Violations of the MMPA**

The MMPA prohibits the "act, use or employment by any person of any deception" or "unfair practice . . . in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020.1. For his MMPA claim to survive dismissal, Roberts must allege that he: "(1) purchased merchandise from the defendant (2) for personal, family, or household purposes and (3) suffered an ascertainable loss of money or property (4) as a result of defendant's use of one of the methods, acts, or practices declared unlawful by the Act." *Kelly v. Cape Cod Potato Chip Co.*, 81 F.Supp.3d 754, 757 (W.D. Mo. 2015) (citing Mo. Rev. Stat. § 407.025.1). Under the MMPA, unlawful acts or practices are construed broadly in an attempt to preserve "fundamental honesty, fair play and right dealings in public transactions." *Jackson v.*

*Hazelrigg Auto. Serv. Ctr., Inc.*, 417 S.W.3d 886, 894 (Mo. App. S.D. 2014). Unlawful acts or practices can include, *inter alia*, those connected to the sale of merchandise which (1) violate a state or federal law intended to protect the public and (2) pose a risk of, or cause, substantial injury to consumers. MO. CODE. REGS. ANN. tit. 15 § 60-8.090.

HDFS does not dispute whether Roberts' alleged purchase of the motorcycle is a sale of merchandise, whether the motorcycle was intended for personal use, or whether he suffered an ascertainable loss of money or property. In urging dismissal of Count II, HDFS repeats its earlier arguments, namely that because Roberts claims he did not sign the PNSA, the alleged errors or omissions in the PNSA are not actionable violations under the MMPA.

As discussed earlier, this Court finds Roberts adequately states a claim for relief due to HDFS's alleged violations of the MVTSA, regardless of Roberts' assertion that he did not sign the PNSA at issue. The MVTSA and its various provisions protect Missouri consumers by regulating the selling and installment financing of motor vehicles. Roberts alleges the retail installment contract used by HDFS omits information required under the MTVSA, including language advising buyers of their rights, the seller's name and location, the cash sales price of the vehicle, and the amount of any down payment made by the consumer. Roberts also alleges that, as a result of these alleged defects, HDFS collects or attempts to collect unlawful interest under those retail installment contracts. Such allegations, if true, are the type of unlawful acts or practices contemplated under the MMPA.

In turn, Roberts has done enough at this stage to survive dismissal, and HDFS's motion to dismiss Count II for failure to state a claim is denied.

### 3. Count III: Injunctive Relief

Roberts also seeks injunctive relief under Mo. Rev. Stat. § 408.562 which, pursuant to § 365.145, permits a court to discretionarily award equitable relief as it deems necessary and proper when a person suffers a loss of any money or property as the result of an unlawful act or practice relating to a retail installment transaction. HDFS argues dismissal of Count III is still warranted for the same reasons that his other claims should be dismissed, but HDFS does not raise any specific arguments regarding why Roberts' request for injunctive relief should fail. Roberts argues injunctive relief is necessary in order to prevent future violations of the law and harm to Missouri's consumers.

For the reasons discussed previously, the Court finds Roberts pleads sufficient facts plausibly showing he has lost money as a result of HDFS's alleged actions and that the alleged conduct of HDFS poses a potential risk of similar harm to other Missouri citizens. If true, such allegations plausibly warrant injunctive relief. In turn, Roberts does not fail to state a claim upon which relief may not be granted. This Court denies HDFS's motion to dismiss Count III.

## IV. CONCLUSION

Accordingly, Defendant Harley-Davidson Financial Services, Inc.'s Motion to Compel Arbitration, or in the Alternative, to Dismiss Second Amended Class Complaint (Doc. #5) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: February 13, 2020